UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
--------------------------------------------------------X
JOHN GRENAWALT, CARLOS MIRANDA,
and JULIO ALICEA, on behalf of themselves
and all others similarly situated,                                    Docket No.: 11-CV-2664(ALC)


                              Plaintiffs,


- against -                                                           MEMORANDUM OF LAW
                                                                      IN SUPPORT OF PLAINTIFFS'
                                                                      MOTION FOR SUMMARY JUDGMENT
                                                                      AND CLASS CERTIFICATION



AT&T MOBILITY LLC; ALPHA-OMEGA
PROTECTION SERVICES CORP.;
GRACE M. DEPOMPO,
GLADIUS PROTECTION, INC.; and
CENTURIA, INC.,

                              Defendants.
--------------------------------------------------------X



Dated: New York, New York
         June 14, 2013



                                                       Respectfully submitted,

                                                       Jason J. Rozger
                                                       Christine Clarke
                                                       BERANBAUM MENKEN LLP
                                                       80 Pine Street, 33rd Floor
                                                       New York, NY 10005
                                                       Ph: (212) 509-1616
                                                       Fax: (212) 509-8088

                              ATTORNEYS FOR PLAINTIFFS AND PROPOSED CLASS

## TABLE OF CONTENTS

I.     **INTRODUCTION**……………………………………………………………1

II.    **STATEMENT OF FACTS**…………………………………………………1

    A.    **DePompo's Role as Employer**……………………………………..……1

    B.    **Payment of Guards' Salaries**……………………………………....…3

III.    **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
SHOULD BE GRANTED**……………………………………………....6

    A.    **Background**……………………………………………………………...6

    B.    **Federal Rule of Civil Procedure 23 is Satisfied**……………………6

        1.    The Rule 23 Requirements…………………………………………6

        2.    The Class Satisfies Rule 23(a)………………………………..…7

            a.    *The Class is Sufficiently Numerous*……………………………7

            b.    *Commonality is Satisfied*………………………………………..8

            c.    *The Named Plaintiffs' Claims are Typical of Class Claims*…..…10

            d.    *The Class is Adequately Represented*……………………………11

        3.    The Class Satisfies Rule 23(b)(3)…………………………………12

            a.    *Common questions Predominate*………………………...……12

            b.    *A Class Action is the Superior Method for Resolving
This Dispute*……………………………………………...15

IV.    **PLAINTIFFS AND CLASS MEMBERS ARE ENTITLED TO SUMMARY
JUDGMENT ON THEIR CLAIMS AGAINST DEPOMPO**……………..………17

    A.    **Defendant DePompo Employed Plaintiffs and
Putative Class Members**………………………………………………..…17

    B.    **Plaintiffs and Putative Class Members are Covered
under the FLSA**……………………………………………………………19

V.    **PLAINTIFFS AND CLASS MEMBERS SHOULD BE GRANTED**

**SUMMARY JUDGMENT ON DAMAGES**…………………………………...…21

   **A.**    **Plaintiffs' Classwide Damages Calculations**……………………….…21

   **B.**    **Plaintiffs and Class Members are Entitled to Liquidated Damages**……………………………………………………25

   **C.**    **Plaintiffs and Class Members are Entitled to Prejudgment Interest**……………………………………...…….……..30

**VI.**   **CONCLUSION**…………………………………………………….……..32

## <u>TABLE OF AUTHORITIES</u>

### <u>Supreme Court Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)……………………………………………12

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)………………………………22, 23

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)……………………………………....23

*Bilski v. Kappos*, 130 U.S. 3218 (2010)…………………………………………………………27

*D.A. Schulte* v. *Gangi*, 328 U.S. 108 (1946)……………………………………………………..20

*Eastman Kodak Co. v. S. Photo Material Co.*, 273 U.S. 359  (1927)…………………………...23

*Falk v.Brennan*, 414 U.S. 190, 195  (1973) ……………………………………………….…17

*Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28 (1961)…………………………………17

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)……………........23

*Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541  (2011) …………………………………….…....…..16


### <u>Second Circuit Cases</u>

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002) …………8,10, 13, 14

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)…………………………..7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) …………………………………………………………11

*Herman v. RSR Security Services, Ltd.*, 172 F.3d 132 (2d Cir. 1999)………………18, 19, 25, 29

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987)……………………………8

*In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24 (2d Cir. 2006)…………………………..7

*In re Nassau County Strip Search Cases*, 461 F.3d 2219, 230 (2d Cir. 2006) …………………16

*In re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 126 (2d Cir. 2001)……….13, 14, 15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)…………………………………….7, 9. 10, 11

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) …………….10, 13

*Reich v. Southern New England Telecommunications Corp.*,
    121 F.3d 58 (2d Cir.1997)…………………………………………………..…….21-23

*Reilley v. NatWest Mkts. Group Inc.,* 181 F.3d 253 (2d Cir. 1999)…………………………29, 30

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003)………………………………..18


**<u>Southern District of New York</u>**

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)…………12, 17, 18

*Archie* v. *Grand Central Partnership, Inc.,* 997 F.Supp. 504 (S.D.N.Y. 1998)……………20, 21

*Boekemeir v. Fourth Universalist Society in City of New York,*
    86 F.Supp.2d 280 (S.D.N.Y. 2000)……………………………………………………20

*Brennan* v. *Wilson Bldg. Inc.,* 478 F.2d 1090 (5th Cir. 1973)………………………………19, 20

*Chenesky v. New York Life Ins. Co.*, 07-civ-11504 (WHP)
    2012 WL 234374 (S.D.N.Y. Jan. 10, 2012)…………………………………………..26

*Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325 (S.D.N.Y. 2009) ……………………………6

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)…………………8, 11, 12

*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005)………………………30

*Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)……………………..6

*In re WRT Energy Secs. Litig.*, 2006 WL 2020947
    2006 WL 2020947, 96-cv-3610 (JFK) (S.D.N.Y. July 13, 2006)………………………10

*Jin M. Cao v. Wu Lian Ye Lexington Restaurant, Inc.*
    08-cv-3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010)……………………………29

*Koss v. Wackenhut Corp.*, 2009 WL 928087
    03-cv-7679(SCR) (S.D.N.Y. Mar. 30, 2009)…………………………………..9, 12, 13

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006)………………………………..12

*Levinson v. About.com*, 2009 WL 1026021,
    02-cv-2222 (DAR) (S.D.N.Y. Apr. 13, 2009)………………………………………6

*Li Ping Fu v. Pop Art Int'l Inc.,* 10-civ-8592 (DLC)(AJP),
    2011 WL 4552436 (S.D.N.Y. Sept. 19, 2011)…………………………………………….29

*Lopez v. Silverman,* 14 F.Supp.2d 405 (S.D.N.Y.1998)……………………………………….18

*Torres v. Gristede's Operating Corp.,* 2006 WL 2819730
    04-cv-3316(PAC) (S.D.N.Y. Sept. 29, 2006)…………………………………………….9, 16

*Wicaksono v. XYZ 48 Corp.,* 10-cv-3635 (LAK) (JCF)

    2011 WL 2022644 (S.D.N.Y. May 2, 2011)……………………………………………..26

*Youngblood v. Family Dollar Stores, Inc.,* 2011 WL 4597555
    09-cv-3176 (RMB) (S.D.N.Y. October 4, 2011)…………………………………….6, 16

*Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240 (S.D.N.Y. 2008)………………………….29

*Zeng Liu v. Jen Chu Fashion Corp.,*
    2004 WL 33412, 00-cv-4221 (RJH)(AJP) (S.D.N.Y. Jan. 7, 2004)…………………….31

**Other Federal  Cases**

*Barone v. Safway Steel Products Inc.,* 2005 WL 2009882
    03-cv-4258 (FB) (E.D.N.Y. August 23, 2005) ……………………………….8, 12, 14, 15

*Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330  (N.D. Ill. 2009)……………….9

*Blue* v. *Finest Guard Services, Inc.,* 2010 WL 2927398,
    No. 09 CV 133 (ARR), (E.D.N.Y. June 24,2010)……………………………………….20

*Creelv v. HCR ManorCare, Inc*., No. 09 Civ. 2879
    2011 WL 3794142 (N.D.Ohio July 1, 2011)…………………………………………….16

*Donovan v. Agnew,* 712 F.2d 1509 (1st Cir. 1983)……………………………………………..18

*Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 45 (E.D.N.Y. 2008) ……………………..10

*Dziennik v. Sealift, Inc.,* 2007 WL 1500080
    05-cv-4659 (DLI)(MDG) (E.D.N.Y. May 29, 2007) ………………………………………6

*Exime* v. *E. W Ventures, Inc.,* 591 F.Supp.2d 1364 (S.D. Fla. 2008)…………………19, 20, 21

*Gonzalez v. Zito Racing Stable Inc.,* 2008 WL 941643
    04-cv-22 (SLT)(AKT) (E.D.N.Y. Mar. 31, 2008)……………………………………….14

*Gortat v. Capala Bros., Inc.,* 2009 WL 3347091,
    07-cv-3629(ILG)(SMG) (E.D.N.Y. Oct. 16, 2009)…………………………..6,10, 11, 14

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009) …………………..6,7, 10, 11, 13

*Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97 (D. Conn. 2009) ……………..8, 14, 16

*Haywood v. Barnes,* 109 F.R.D. 568 (E.D.N.C. 1986)…………………………………………8

*Jankowski v. Castaldi*, 2006 WL 118973
    01-cv-0164 (SJF)(KAM) (E.D.N.Y. Jan. 13, 2006)……………..………………7, 14

*Marriott v. County of Montgomery,* 227 F.R.D. 159 (N.D.N.Y. 2005)…………………………12

*Martin v. Selker Bros., Inc.* , 949 F.2d 1286 (3d Cir. 1991)…………………………………..22

*Mendez v. Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) ………………………………………6

*Mendez v. Radec Corp.*, 232 F.R.D. 78, 92 (W.D.N.Y. 2005) ……………………………14, 15

*Mitchell v. County of Clinton*, 2007 WL 1988716,
    8:06-CV0254 (N.D.N.Y. July 5, 2007)………………………………………………12

*Niemic v. Ann Bendick Realty*, 2007 WL 5157027
    1:04-cv-00897-ENV-KAM (E.D.N.Y. Apr. 23, 2008) ………………………………6

*Perero v. Food Jungle, Inc.*, 2006 WL 2708055 (E.D.N.Y. Aug. 7, 2006)……………………..31

*Ramos v. SimplexGrinnell L.P.,* 796 F.Supp.2d 358 (E.D.N.Y. 2011)…………………………12

*Rodilla* v. *TFC-RB, LLC,* 2009 WL 3720892,
    No. 08-21352-CIV-AMS (S.D.Fla. November 4,2009)………………………………20

*Rodriguez v. Hayes*, 591 F.3d. 1105 (9th Cir. 2010)………………………………………9. 11

*Tobin v. Promersberger,* 104 F.Supp. 314, 318 (D.C. Minn.1952)…………………………….20

## New York State Cases

*Alphonse Hotel Corp. v. Sweeney,* 674 N.Y.S.2d 351 (1st Dep't 1998*)…………………………23*

*Georgakis Painters Corp. v. Hartnett*, 565 N.Y.S.2d 863 (3d Dep't 1991)……………………23

*Mid Hudson Pam Corp. v. Hartnett*, 549 N.Y.S.2d 835 (3d Dep't 1989)………………………23

*Ji v. Belle World Beauty, Inc.*, N.Y. Slip Op. 32753,
    No. 603228/08 (N.Y. Sup. Ct., August 22, 2011) …………………………………26, 29

*Monroe County Public School Districts v. Zyra,*

51 A.D.3d 125, 853 N.Y.S.2d 821 (N.Y. 4th App. Div. 2008)…………………………27

*Pesantez v. Boyle Environmental Services, Inc.*,
673 N.Y.S.2d 659, 660 (N.Y. App. Div. 1st 1998)………………………………13, 15, 16

# I.  INTRODUCTION

In accordance with this Court's April 2, 2013 Amended Opinion and Order, and May 16, 2013 Order of Discontinuance, plaintiffs renew their motion for class certification and summary judgment as against defendant Grace DePompo only.  All claims against the remaining defendants were disposed of by the April 2, 2013 in that order, with the exception of defendant Alpha Omega Protection Services Corp, ("A-O") the company owned and operated by Ms. DePompo, against which plaintiffs and putative class have an $818,000 default judgment (docket entry # 139).

# II.  STATEMENT OF FACTS[1]

### A.      DePompo's Role As Employer.

Plaintiffs and putative class members are security guards employed by defendant DePompo to supply security services at AT&T (and previously, Cingular) stores. (PX47 22:9-19; P56.1¶1). Ms. DePompo initially supplied these services by herself, but by roughly October of 2007, she had started a company, defendant Alpha Omega Protection Services ("A-O"), through which she employed plaintiffs and putative class members to provide the same services. *Id.* The services were provide to AT&T through a subcontract, with the Gladius (later Centuria) being the primary contract holder. *Id.*

Ms. DePompo was the sole owner of defendant A-O. (PX 47 130:18-19).

Plaintiffs and putative class members were recruited and hired directly by DePompo, initially with assistance from the Gladius owners:

---

[1]Only those facts relevant to the within motion against Ms. DePompo are recounted here.

Q. Your role was to, at that point, meaning the holidays in 2006, was to post and
advertise for people who wanted to work as security guards on the side?
A. Yes.
Q. How many?
A. I don't recall.
Q. Was there anybody else doing this same kind of recruiting for Mr. Branch and
Mr. Isham at that point?
A. We kind of all worked together, you know, it was sort of tell a friend, you
know, so everybody kind of pitched in and helped.

(PX47 16:9-24).

Q. Jumping ahead to January 2007, what were your duties at that point regarding
Gladius?
A. Coordinating officers, finding them personnel to fulfill their obligation to
Cingular.

(PX47:19:19-22).

After learning which AT&T stores required guards, DePompo devised most of the

guards' schedules. (PX48 37:15-38:4). She distributed written post orders instructing the guards

on how to perform aspects of their job. (PX25; PX47 51:15-53:11; PX55 19:1-18; P56.1¶10).

Ms. DePompo later distributed revised post orders in the summer of 2010. (PX26; PX 47 58:5-

58:22, 59:23-60:5; P56.1¶11). Once the guards were in place at an AT&T store, they would

verify with DePompo via a phone call or text message that they had arrived at their post. (PX47

28:5-8; PX56 24:6-14; P56.1¶12).

Ms. DePompo had no administrative employees and thus she handled hiring, day to day

scheduling, and other administrative duties with respect to the guards by herself, with only

occasional unpaid help from friends who had no decision making authority.  (PX 47 20:15-

21:12; PX48 17:3-25, 18:11-17, 18:22-19:18).

Q. What about administrative staff?
A. I just had friends come in and help me on occasion. No one particularly, you
know, that was employed, no employee.
Q. And was one of your staff members named Karen?
A. Yes.

Q. And what did she do to help you around the office?
A. She would help me, come into my house. At that time my mom was sick, she was living with me, and she would come in and just pick up where I wouldn't pick up the slack, you know, help me with payroll, help me with doing scheduling on occasions.
Q. Would she respond to the guards' inquiries, answer phones?
A. She would, but everything came back through me before, you know, she made any decision, or...
Q. So she ran everything through you?
A. That's correct.
Q. Did you have any other administrative staff working for you?
A. Non so-called staff, but my friend Joanne would come in and help me out every once in a while. And my friend Marianna would come in and help me out, because they just saw that this was a 24/7 operation, I was burnt out.

(PX48, 18:11-17, 18:22-19:18).

**B.      Payment of Guard's Salaries.**

Some guards were paid as W-2 employees, with all applicable withholding taxes, and some were paid on a 1099 basis. There was no difference in the duties of the guards in either case. (PX 48 55:24 - 56:12; PX47 86:14-87:10; P56.1¶18). In order to determine how many hours an employee paid on a 1099 basis worked during the two-week pay period, one would divide the amount of money paid to that guard by that employee's hourly rate. This is subject to any variations in that rate, during the pay period, caused by an increased hourly rates for last-minute guard requests. (PX47 83:13-84:5; P56.1¶31). Most guards were paid $20 per hour (PX47 127:22-24; P56.1¶31) although some would get up to $25 per hour for some locations, or a last-minute assignment. (PX53 16:23-17:7; PX54 14:11-17; PX55 14:19-24; PX57 23:12-18; PX 59 16:2-5; PX60 14:11-25; PX61 22:3-15; PX63 15:14-21; P56.1¶31). Leonard Howard was generally paid $22 per hour (PX59 16:2-5) and John Grenawalt started at $20 per hour and was later paid $22 per hour (PX 56 86:12-17). Stephen Thomas started at $20 per hour and then was given a raise to $25 per hour. (PX60 80:14-81:13). Porfirio Llanes was paid $25 per hour to start, which was reduced to $22 per hour. (PX61 12:1-11).

3

To get paid, every two weeks the guards would submit a document titled "Invoice/Time Sheet" (*e.g.,* PX 27, PX 29; *see also* PX47 81:23-82:6, 84:10-85:23; P56.1¶24) that contained the guard's s name, address, and for each day worked, the date, location, and time in and time out. This would be faxed to Ms. DePompo[2] (PX47 67:8-11), who would then tally up all the money owed for that pay period and transmit it to Gladius, the prime contractor. (PX47 36:2-25, 112:15-23; P56.1¶25). Gladius would send an invoice to AT&T for a particular time period after receiving the corresponding invoice from DePompo. (PX 46 47:24 - 48:12). Because A-O had to wait for payment from Gladius, guards had to wait at least two weeks, sometimes longer, after the end of the pay period before receiving a check. (PX30; PX47 110:19-111:22; PX53 35 10-18; PX 54 32:15-33:10; PX 59 24:11-23, 25:2-13; PX60 35:1-9; PX62 51:1-7). Ms. DePompo destroyed all of the timesheets after she transmitted the information to ADP for payroll processing, despite her legal obligation to keep those records. (PX47 37:2-7, 87:11-88:10; P56.1¶27).

For the guards paid on a W-2 basis, their hours were recorded in the ADP records (*e.g.,* PX45, p.P1551; P56.1¶28). For the guards paid on the 1099 basis, only the total amount due for those two weeks was entered into ADP (*id.,* p. P1550; PX47 38:13-39:14, 86:3-13; P56.1¶29). The pay period began on a Friday and ended on a Thursday. (PX47 81:13-16; P56.1¶30).

Many guards worked more than 40 hours in a week. (PX48 42:12-43:3; PX53 32:1-10; PX54 55:11-14; PX56 88:16-23; PX57 36:16-37:14l PX59 21:8-15; PX60 27:11-13; PX61 25:1-5; PX62 37:23-38:1; P56.1¶16). DePompo admits that no guard was paid time-and-a-half for overtime hours. (PX47 129:5-130:13; P56.1¶17).

---

[2]Stephen Thomas testified that in the earlier part of the class period, the AT&T store manager would also sign the invoice. (PX60 30:3-30:7).

The New York State Department of Labor, in response to a complaint from one of the guards, found that A-O's guards were not exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). (PX50; PX48 10:20 - 13:3; P56.1¶19). The U.S. Department of Labor considers security guards to be not exempt from the FLSA's overtime requirements. (PX66; P56.1¶20).

The guards received no pay at all for the last two pay periods, or four weeks, of their employment (PX48 53:5-1, PX47 183:14-16; P56.1¶14-15, 23), which corresponds to January 28, 2011 through February 24, 2011. For those guards enrolled in ADP (which is all but seven, (PX51)), the last two pay periods represent their unpaid wages (PX45;  PX48 52:18 - 53:24, 68:2-15), and for those guards who were not on ADP, Ms. Depompo had manual records (PX51; PX48 54:11 -55:6). Although Ms. DePompo expressed doubt that weeks marked 06 and 09 in the ADP records (PX45) represented the unpaid final two pay periods (PX48 53:25-54:5), the amounts for those weeks match up the amounts due that appear from the individual timesheets. (PX45). DePompo admits owing the guards their pay for January 28, 2011 through February 25, 2011 (PX42; PX47 182:14-9) and believes that the total unpaid wages to the guards total about $185,000 (PX47 183:10-13). The plaintiffs and class members are also owed their unpaid overtime in the total amount of $140,238.17. (PX64, PX70, Rozger affirmation ¶ 35).

### III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED.

**A.      Background**

The Southern District of New York has noted that "whether defendants' pay practices violated the NYLL overtime, minimum wage, and late payment provisions ... are about the most perfect questions for class treatment." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 334 (S.D.N.Y. 2009) (quoting *Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)) (emphasis added)**.** This is also evident from New York courts' frequent certification of wage classes generally. *See, e.g., Mendez v. Radec Corp.*, 260 F.R.D. 38, 54 (W.D.N.Y. 2009) ("My conclusion that class certification is proper [for plaintiffs seeking lost wages] is in accord with *many other decisions* from within this circuit.") (emphasis added) (collecting Second Circuit cases); *Levinson v. About.com*, 2009 WL 1026021, 02-cv-2222 (DAR) (S.D.N.Y. Apr. 13, 2009); *Niemic v. Ann Bendick Realty*, 2007 WL 5157027, 1:04-cv-00897-ENV-KAM (E.D.N.Y. Apr. 23, 2008); *Dziennik v. Sealift, Inc.*, 2007 WL1500080 05-cv-4659 (DLI)(MDG) (E.D.N.Y. May 29, 2007);  *Youngblood v. Family Dollar Stores, Inc.,* 2011 WL 4597555, *4, 09-cv-3176 (RMB) (S.D.N.Y. October 4, 2011). In keeping with this well-established precedent, the class should be certified here.

**B.      Federal Rule of Civil Procedure 23 is Satisfied.**

      1.      The Rule 23 Requirements.

"[I]t seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 2009 WL 3347091, 07-cv-3629(ILG)(SMG) (E.D.N.Y. Oct. 16, 2009) ("*Gortat II*") (quoting *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009) ("*Gortat I*")). Accordingly, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive

construction" *Id.* (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). *See also Jankowski v. Castaldi*, 2006 WL 118973, 01-cv-0164 (SJF)(KAM) at *1 (E.D.N.Y. Jan. 13, 2006) (courts considering class certification "are to adopt a standard of flexibility").

Rule 23 permits a class to be certified when it satisfies the elements of Rule 23 (a) and one of the subsections of Rule 23 (b). *See In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006) ("*IPO*"). The Rule 23 (a) elements are:

>    (1) the class is too numerous for joinder to be practicable;

>    (2) the class shares at least one common question of law or fact;

>    (3) the named plaintiffs' claims are typical of the class; and

>    (4) the named plaintiffs will adequately represent the class.

*Id.*

Rule 23(b)(3), under which plaintiffs seek certification here, requires "predominance, *i.e.*, law or fact questions common to the class predominate over questions affecting individual members, and superiority, *i.e.*, class action is superior to other methods." *IPO* at 32. All of these requirements are satisfied here.

>    2.    The Class Satisfies Rule 23(a).

>        a.    *The Class is Sufficiently Numerous.*

"Courts in the Second Circuit presume numerosity when the putative class has at least forty members." *Gortat II*, 2009 WL 3347091, at *3 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). DePompo testified that she thought she had forty guards working for her at one time  (PX47 72:3-73:5) and that approximately 88 guards were owed unpaid wages. (PX48 44:23-45:1). From the ADP records, 70 guards are entitled to overtime

pay, and about 88 are owed unpaid wages from the last two pay periods. (PX45; PX48 44:23-45:1; PX 51). Thus, numerosity is satisfied.

b.    *Commonality is Satisfied.*

Commonality requires only one common issue of law or fact. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987); *Barone v. Safway Steel Products, Inc.*, 2005 WL 2009882, 03-cv-4258 (E.D.N.Y. August 23, 2005) at \*4; *see also Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009) ("Commonality is established so long as the plaintiffs can identify some unifying thread among the members' claims.") (quotation and citation omitted). Plaintiffs need not show that all class members' claims are identical. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008). Any differences among class members, "while arguably relevant as defenses to liability, do not change the fact that [a] class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk County,* 191 F.R.D. 16, 23 (D. Mass. 2000) (certifying class despite "varying defenses to liability which may be raised regarding particular individuals"). A class should be certified where the class claims arise "from a common nucleus of operative fact regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *Haywood v. Barnes,* 109 F.R.D. 568, 577 (E.D.N.C. 1986).

The requisite commonality is present here. Plaintiffs and the class allege a common wrong - AT&T, DePompo, and A-O's failure, as the plaintiffs' joint employers, to pay them overtime wages, and their failure to pay them for four weeks of work. This alone is enough to satisfy Rule 23(a)(2). *See Barone*, 2005 WL 2009882, at \*4 (commonality satisfied where "plaintiffs allege a common wrong -- that Safway failed to pay the prevailing wages and supplemental benefits required for public works contracts"); *Haddock*, 262 F.R.D. at 117 ("If

one or more Class members brought suit individually, they would raise the same legal claim, that is, that Nationwide breached its fiduciary duty [in violation of ERISA] . . . . Thus, the commonality requirement is met."); *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (commonality satisfied where one "alleged common employment practice [*i.e.*, denying overtime pay] represents a sufficient common issue of law or fact").

In addition, as plaintiffs allege and the evidence shows, the defendants' wrong arose from a common factual background, *e.g.* the guards common employment at the AT&T retail stores, the common methods of paying the guards, and the common policy of not paying any of them overtime. These facts show that commonality is satisfied. *See Koss v. Wackenhut Corp.*, 2009 WL 928087, at *6, 03-cv-7679(SCR) (S.D.N.Y. Mar. 30, 2009) (where security officer potential class members did not receive a promised bonus, they "allege injury from a common policy or set of facts, [and] the commonality requirement is met;") *see also Rodriguez v. Hayes*, 591 F.3d. 1105, 1122 (9th Cir. 2010) (citing, *inter alia*, *Marisol*, 126 F.3d 372) ("[T]he commonality requirement asks us to look only for . . . a common core of salient facts.").

Commonality is also satisfied because plaintiffs and the class share specific questions of fact and law, such as: (1) whether Ms. DePompo was their "employer" pursuant to the FLSA and the New York Labor Law; and (2) whether they are entitled to overtime pay for the hours they worked greater than 40 in a week. *See Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, 04-cv-3316(PAC) at *12 (S.D.N.Y. Sept. 29, 2006) (in overtime case, common questions warranting certification included "whether defendants have failed to compensate class members"); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 153-54 (S.D.N.Y. 2002) (same).

Differences in work performed, schedules, or rates of pay will not defeat class certification. *See Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (commonality satisfied despite "differences among employees -- *i.e.*, responsibilities, hours worked, and salaries"); *Gortat I*, 257 F.R.D. at 362 (rejecting defendant's argument that "individualized questions regarding the number of hours that a specific employee worked" defeat certification).

Any defenses Ms. DePompo may raise would not thwart commonality. *See In re WRT Energy Secs. Litig.*, 2006 WL 2020947, 96-cv-3610 (JFK) at *2 (S.D.N.Y. July 13, 2006) (finding commonality despite individualized defenses and noting that such defenses will not "defeat . ..commonality"). Indeed, they may *support* commonality because their disposition is a common issue of law. *See Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 45 (E.D.N.Y. 2008) (certifying class over defendants' objection regarding individualized defenses because those defenses actually "provide[d] an additional link of commonality between the class members") (quotation and citation omitted). Therefore, commonality is satisfied.

c.   <em>The Named Plaintiffs' Claims are Typical of the Class' Claims.</em>

Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Gortat II*, 2009 WL 3347091, at *6 (quoting *Marisol A.*, 126 F.3d at 376). "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez*, 591 F.3d at 1124 (internal quotation omitted) (citing, *inter alia*, *Marisol A.*, 126 F.3d at 326). *See also Bolanos*, 212 F.R.D. at 155 ("[s]ince the claims only need to share the same essential

characteristics, and need not be identical, the typicality requirement is not highly demanding.")
(quotation and citation omitted).

Here, typicality is satisfied for the same reasons as commonality. *See Gortat I*, 2009 WL
3347091, at *6 (quoting *Marisol A.*, 126 F.3d at 376) ("[t]he commonality and typicality
requirements tend to merge into one another, so that similar considerations animate the analysis
of each."). That is, the named plaintiffs' and class members' claims arise from the same core set
of facts. *See supra*. And, plaintiffs and the class make the same claims and legal arguments,
including: (1) they all performed security guard work at the AT&T retail stores; (2) they all were
not paid for the work they performed between January 28, 2011 and February 25, 2011; and (3)
they were not paid one and a half times their regular hourly rate for the hours worked over 40 in
a week. For these reasons, typicality is present and the class should be certified. *See Gortat II*,
2009 WL 3347091, at *6 (finding typicality where "[n]amed plaintiffs allege that they each
performed similar work for defendants and that, like the other members of the class, they were
never compensated for all the hours they worked as a result of Defendants' common scheme to
deprive employees of pay for all hours worked") (quotation omitted).

d. *The Class is Adequately Represented.*

Adequacy under Rule 23(a)(4) "typically entails inquiry as to whether: (1) plaintiff's
interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys
are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v.
A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotation and citation omitted). *See
also Damassia.*, 250 F.R.D. at 158 (applying same inquiry in wage-and-hour context); Fed. R.
Civ. P. 23(g) (considering lawyers' qualifications in appointing class counsel).

Here, plaintiffs' interests are not antagonistic to the class. Plaintiffs and the class all allege the same wrongs and seek the same relief. *See Barone*, 2005 WL 2009882, at *5 (prevailing wage plaintiffs were adequate where they "seek the same relief as the rest of the class") (citing *Marisol A.*, 126 F.3d at 378); *see also Koss*, 2009 WL 928087, at *8 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). Further, nothing suggests any conflicts between plaintiffs and the class, or that plaintiffs will not adequately and aggressively represent the class.

In addition, because commonality and typicality are satisfied, adequacy is satisfied. *See Damassia*, 250 F.R.D. at 158 ("[t]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class"); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006) (same); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (same). Finally, plaintiffs' counsel are qualified, experienced and able to conduct this litigation. *See Ramos v. SimplexGrinnell L.P.,* 796 F.Supp.2d 346, 358 (E.D.N.Y. 2011); *Mitchell v. County of Clinton*, 2007 WL 1988716, *6, 8:06-CV0254 (N.D.N.Y. July 5, 2007); *Marriott v. County of Montgomery,* 227 F.R.D. 159 (N.D.N.Y. 2005). Therefore, adequacy is present, and the class should be certified.

      3.      <u>The Class Satisfies Rule 23(b)(3).</u>

Certification is appropriate under Rule 23(b)(3) because (1) "questions of law or fact common to class members predominate" over questions affecting only individual class members and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating [this] controversy." Fed. R. Civ. P. 23(b)(3).

      a.      *Common Questions Predominate.*

Predominance is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 126, 136 (2d Cir. 2001) (quotation, citation and alteration omitted); *Gortat II*, 2009 WL 3347091, at *7 (same). "When determining whether common questions predominate courts focus on the liability issue[,] and if the liability issue is common to the class, common questions are held to predominate[.]" *Bolanos*, 212 F.R.D. at 157-58 (quotation, citation and alteration omitted).

Issues "predominate" when they are fundamental to the claim. *See Koss*, 2009 WL 928087, at *11 ("While some degree of individualized analysis will be necessary . . . the fundamental factual issue -- whether [bonuses should have been] paid . . . . -- is subject to generalized proof" therefore predominance was satisfied). In wage cases such as this, the fundamental issues are whether the employer paid its employees properly, therefore predominance generally is found. *See Id.*; *Pesantez v. Boyle Environmental Services, Inc.*, 673 N.Y.S.2d 659, 660 (N.Y. App. Div. 1st 1998) ("the nature of the claims [for failure to pay prevailing wages] is such as to indicate a predominance of common issues of law and fact"); *see also Noble*, 224 F.R.D. at 345 (where "the gravamen of [plaintiffs']claim is that defendants . . . deprived employees of . . . overtime pay[,] [a]lthough [some] determinations . . . will require individualized findings, common liability issues otherwise predominate").

As with commonality, predominance will not be defeated by such factual variations as jobtitles, hours, and locations of work. *See Gortat II*, 2009 WL 3347091, at *7 (differences in position, hours and method of payment "do not predominate over the main issue: . . .that defendants paid all of these employees for fewer hours than they claim to have worked"), *citing*

13

*Gortat I*, 257 F.R.D. at 362 (finding defendants' arguments regarding these "distinctions" "not

persuasive"); *Bolanos*, 212 F.R.D. at 157-58 (rejecting defendant's argument that "each class

member must individually prove actual overtime worked in the unique circumstances of his or

her position, . . . [location,] time and place" because plaintiffs' claims are based on alleged

across-the-board deprivation of overtime wages[,]" therefore predominance was satisfied); *see

also Gonzalez v. Zito Racing Stable Inc.,* 2008 WL 941643, 04-cv-22 (SLT)(AKT) at *7

(E.D.N.Y. Mar. 31, 2008) ("some factual variation among the circumstances of the class

members is inevitable and does not defeat the predominance requirement").

Individualized defenses also will not defeat predominance. *Visa Check*, 280 F.3d at 139

("the fact that a defense may arise and may affect different class members differently does not

compel a finding that individual issues predominate over common ones") (quotation and citation

omitted); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 92 (W.D.N.Y. 2005) ("*Mendez I*"); *Jankowski*,

2006 WL 118973, at *4. Nor will differences in damages. *See Barone*, 2005 WL 2009882, at *5.

Defendant may argue that individual claims predominate because determining each

individual's damages examining individualized employment records (*e.g.*, the ADP records).

This argument would fail. Courts have consistently held that the need to calculate individual

damages by reference to employment records such as those produced here is no impediment to

class certification. *See Haddock*, 262 F.R.D. at 128 (where defendant "produced data

demonstrating the amount of [wrongful] payments . . . determining the appropriate [recovery] for

each Class member requires a mechanical calculation using readily available data" such that

certification was appropriate); *Jankowski*, 2006 WL 118973, at *5 (reasons for certification

included fact that "whether an individual worked [hours] for which they were not paid [proper]

wages. . . can be verified by reference to objective documentation, including employee payroll records").

As demonstrated earlier, numerous common questions of law and fact exist here. A class action will permit an answer to the common legal questions of whether DePompo was the plaintiffs' and class members' employer, and whether they are entitled to overtime pay. Even the issue of damages is common to the class, since each class member's damages can be proven by reference to the common ADP records[3]. Under these circumstances, predominance is satisfied. *Mendez I*, 232 F.R.D. at 93 (where plaintiffs challenge "policies, which allegedly have been applied in a more or less uniform fashion to [all] employees[,] . . . [common issues] 'predominate over those issues that are subject only to individualized proof'") (quoting *Visa Check*, 280 F.3d at 136).

> b.      *A Class Action is the Superior Method for Resolving This Dispute.*

Because the most important questions of law and fact are common to the class, Rule 23(b)(3) is satisfied because a class action is the superior method for resolving plaintiffs' and the class' claims**.** Class members have little interest "in individually controlling . . . separate actions." Fed. Rule Civ. Proc. 23 (b)(3)(A). Indeed, in addition to the three named plaintiffs and class representatives, seven other plaintiffs joined in this action pursuant to 29 U.S.C. 216(b). Further, many of the class members seek relatively modest damages that may not justify the cost of individual litigation. (PX65). *See Barone*, 2005 WL 2009882, at *3; *Pesantez*, 673 N.Y.S.2d at 661. Further, "concentrating the litigation in [this] forum simplifies and streamlines the litigation process." *See id.* (finding superiority on this ground); *see also Barone*, 2005 WL

---

[3]Although some class members are owed overtime, some unpaid wages, and many are owed both, since individuals in each of those groups are not antagonistic to each other, it is appropriate to consider those differences as permissible variation in damages, and certify individuals in the same class, rather than in subclasses.

2009882, at *3 (certifying prevailing wage class to "save [] considerable time and expense").

Deciding all class members' claims in this Court "would eliminate the risk that [common]

questions . . . will be decided differently in [different] lawsuit[s]." *See Torres*, 2006 WL

2819730, at *16 (finding superiority on this ground).

     Finally, a class action is superior because it would be manageable. *See* Fed. R. Civ. P.

23(b)(3)(D). As demonstrated *supra*, the many common questions in this case predominate over

any individual questions. *See In re Nassau County Strip Search Cases*, 461 F.3d 2219, 230 (2d

Cir. 2006) ("we perceive little difficulty in managing a class action of liability, especially since .

. . any individualized inquiries will be few and far between"). To the extent that individual issues

exist, "most of [them] can be resolved by [] documentary evidence[,]" *See Pesantez*, 673 N.Y.2d

at 661; *see also Haddock*, 262 F.R.D. at 128-29 (where defendant "produced data demonstrating

the amount of [wrongful] revenue sharing payments . . . determining the appropriate figure [of

disgorgement] for each class member requires a mechanical calculation using readily available

data[,]" therefore class action was manageable). For all of these reasons, a class action is the

superior method for adjudicating this case. Therefore, the class should be certified.

     The recent Supreme Court case in *Wal-Mart Stores v. Dukes,* 131 S.Ct. 2541, 180

L.Ed.2d 9374 (2011) does not compel a different result. This is a case for unpaid overtime and

unpaid wages, where intent is irrelevant. "Unlike the claims in *Wal–Mart,* plaintiffs' NYLL

claims 'do not require an examination of the subjective intent behind millions of individual

employment decisions; rather, the crux of this case is whether the company-wide policies, as

implemented, violated plaintiffs' statutory rights.'" *Youngblood v. Family Dollar Stores, Inc.,*

2011 WL 4597555, *4, 09cv3176 (RMB) (S.D.N.Y. October 4, 2011) (citing *Creelv v. HCR

ManorCare, Inc*., No. 09 Civ. 2879, 2011 WL 3794142, at *1 (N.D.Ohio July 1, 2011).

Accordingly, this Court should certify this case as a class action pursuant to F.R.C.P. 23(b)(3), with the following class definition: "all employees of Alpha-Omega Protection Corp. who provided security services at any AT&T retail store and are owed unpaid wages, unpaid overtime wages, or both."

## IV. PLAINTIFFS AND CLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS AGAINST DEPOMPO.

### A.    Defendant DePompo Employed Plaintiffs and Putative Class Members.

The Fair Labor Standards Act ("FLSA") defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and further defines "employ" as "suffer or permit to work." 29 U.S.C. §§ 203(d), (g)[4]. The Supreme Court has recognized the "expansiveness" of these definitions, *Falk v.Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973) and has held that it is the "economic reality, rather than technical concepts" that governs whether someone is an employee. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) (internal quotations omitted). The Second Circuit recognized that the FLSA's is "the broadest definition of 'employ' that has ever been included in any one act," and that this statutory definition is more expansive

---

[4]The New York Labor Law defines "employer" as "the person employing any such mechanic, workingman or laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate," and also defines "employed" as "permitted or suffered to work." N.Y. Labor Law §2(6)-§2(7). For joint employment purposes, there is no difference between the FLSA and the New York Labor Law. *See Chen v. Street Beat Sportswear, Inc.*, 364 F.Supp.2d 269, 278 (E.D.N.Y.2005) ("[b]ecause the standards under both laws are similar, the Court will consider the 'economic reality' test under federal law as to defendants' liability as joint employers under both federal and New York law;); *Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 189 (S.D.N.Y. 2003) ("because New York Labor Law and the FLSA embody similar standards ... I will consider the federal law in deciding whether defendants were joint employers").

than the common law understanding of "employee." *Zheng v. Liberty Apparel Co. Inc*., 355 F.3d 61, 69 (2d Cir. 2003) (citations and internal quotations omitted).

In determining whether an individual corporate officer is a joint employer, and thus jointly and severally liable for unpaid wages under the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Security Services, Ltd*., 172 F.3d 132, 139 (2d Cir. 1999) (holding a shareholder and member of the board to be an employer under the FLSA where he had the authority to hire managerial staff, occasionally supervised and controlled employee work schedules, and had the authority to sign payroll checks.).

Where officers and owners have "overall operational control of the corporation, possess an ownership interest in it, control significant functions of the business or determine the employees' salaries and makes hiring decisions," they may be held to be employers under the FLSA. *Ansoumana*, 255 F.Supp.2d at 192, *quoting Lopez v. Silverman*, 14 F.Supp.2d 405, 412 (S.D.N.Y.1998) ("One who is the chief executive officer of a corporation, has significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for the purposes of the FLSA.") (internal citations omitted). *See also Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) ("The overwhelming weight of authority is a corporate officer with operational control of a corporation's covered enterprise is an employer with the corporation, jointly and severally liable under the FLSA for unpaid wages.").

As stated above, *supra*, Ms. DePompo was the sole owner and singular non-guard employee of defendant A-O. (PX 47 130:18-19;  PX 48 17:3-25, 18:11-17, 18:22-19:18). She hired and recruited them directly (PX 47 16:9-24), had authority to fire or retain employees (PX

47 100:22-101:12), derived their schedules (PX 48 37:15-38:4), and distributed written post

orders and instructions (PX 25; PX 47 51:15-53:11; PX 55 19:1-18; P56 ¶ 10-11). She was also

solely responsible for receiving the plaintiffs' hours worked and submitting them to Gladius and

ADP, the payroll system (PX 47 36:2-25; 112:15-23; P56 ¶ 24-25).

As the only administrative employee and sole owner of A-O, which directly employed all

the plaintiffs, there is simply no question that Ms. DePompo "possessed the power to control the

workers in question." *Herman* 172 F.3d at 139.

### B.      Plaintiffs and Putative Class Members are Covered under the FLSA.

Defendant DePompo may claim that plaintiffs' FLSA claim fails as against her because

she allegedly did not engage in interstate commerce. This argument is without merit. First, she

admits in paragraph 7 of A-O's Answer[5] that this Court has jurisdiction over this matter. Second,

the evidence clearly shows that the plaintiffs and class members are covered under the FLSA.

"It has been firmly established that the phrase 'engaged in commerce' within the meaning

of section 203 of the FLSA is to be given a broad, liberal construction rather than a strained,

technical one in order to effectuate" the "remedial and humanitarian purpose" of the act. *Brennan*

v. *Wilson Bldg. Inc.,* 478 F.2d 1090,1094 (5th Cir. 1973). In order to demonstrate coverage under

the FLSA, a plaintiff can show either "individual coverage" or "enterprise coverage." *See, e.g.,*

*Exime* v. *E. W Ventures, Inc.,* 591 F.Supp.2d 1364, 1368 (S.D. Fla. 2008). In this instance, the

facts support both types of coverage.

An individual employee is covered under the FLSA where that individual was engaged in

commerce or the production of goods for commerce. *See, e.g., id.* Under this theory, the test is

"whether [employees] are actually in or so closely related to the movement of the commerce as

---

[5]Docket Entry #22. The A-O defendants answered the plaintiffs' First Amended Complaint, but
not the Second Amended Complaint.

to be a part of it." *Blue* v. *Finest Guard Services, Inc.,* 2010 WL 2927398, No. 09 CV 133 (ARR), (E.D.N.Y. June 24,2010), *quoting Boekemier v. Fourth Universalist Society in City of New York,* 86 F.Supp.2d 280, 287 (S.D.N.Y. 2000).

In this instance, AT&T, whose retail stores plaintiffs guarded, was engaged in the interstate sales of cell phones (mostly imported from China) and related equipment. (P56.1¶2) Such goods remained in "interstate commerce" until they were eventually acquired by the ultimate consumer - customers who entered AT&T stores. *See, e.g., Brennan,* 478 F.2d at1095. Moreover, multiple courts have held that security guards are "engaged in the production of goods for commerce" for purposes of the FLSA where "the businesses they help to protect are themselves engaged in such commerce." *Blue,* 2010 WL 2927398; *see also Tobin v. Promersberger,* 104 F.Supp. 314, 318 (D.C. Minn.1952)*; Rodilla* v. *TFC-RB, LLC,* 2009 WL 3720892, No. 08-21352-CIV-AMS (S.D.Fla. November 4,2009) (string cite). "This conclusion is not altered even if the employees involved are not employees of the firms that produced the goods." *Rodilla,* 2009 WL 3720892, *citing D.A. Schulte* v. *Gangi,* 328 U.S. 108,116-117 (1946).

Secondly, A-O itself engaged in commerce, and thus all of its employees are entitled to "enterprise coverage" under the FLSA. All employees of an enterprise are covered where "at least two employees" of the company engaged in commerce or in "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." *Exime,* 591 F.Supp.2d 1364, 1369, *quoting* 29 U.S.C. § 203 (s)(1)(A)(i). Under the theory of enterprise coverage, "most, if not every, Circuit Court" has found that the FLSA, as currently written "expand[s] coverage to virtually all employers ... " *Id.* at 1370; *see also, Archie* v. *Grand Central Partnership, Inc.,* 997 F.Supp. 504, 529-30 (S.D.N.Y. 1998) ("virtually every enterprise in the nation ... is covered by the FLSA"). Therefore, "the enterprise commerce test,

quite simply, embraces all businesses whose employees regularly handle materials previously moved across inter-state lines." *Exime,* 591 F.Supp.2d at 1368.

Most tellingly, A-O employed security guards to work in AT&T stores in New Jersey as well as New York. (PX47 126:15-17; PX7; PX 46  111:9-18)  The FLSA defines those engaged in "commerce" as those engaged in, *inter alia,* transportation and communication among the several States." 29 U.S.C. § 203 (b). Thus, because some A-O employees "engaged in commerce" in the sense that they communicated and traveled interstate for their work, A-O itself was engaged in commerce**.** Furthermore, there is enterprise coverage where the origin of various "materials" handled by plaintiffs was not identified, but "some of which undoubtedly moved in interstate commerce to New York City." *Archie* v. *Grand Cent. Partnership, Inc.,* 997 F.Supp. 504,530 (S.D.N.Y. 1998) (where employees used various cleaning supplies). The phones and other equipment sold at the AT&T stores surely fall in this category. Thus, there is no doubt that the FLSA applies to all of the plaintiffs' work.

## V. PLAINTIFFS AND CLASS MEMBERS SHOULD BE GRANTED CLASSWIDE SUMMARY JUDGMENT ON DAMAGES[6]

### A.    Plaintiffs' Classwide Damages Calculations.

As set forth above, this case is susceptible to proving each class member's damages through the ADP payroll records, and there is no dispute of material fact on that issue. Here, defendant DePompo, in violation of the FLSA and the N.Y. Labor Law, destroyed the weekly timesheets that would have shown, with great accuracy, the hours worked each week by each class member, and the applicable hourly pay rate. Under these circumstances, the class members

---

[6]Plaintiffs and class members are entitled to summary judgment the issue of damages, including liquidated damages (*see infra*) and pre-judgment interest. However, should the Court grant plaintiffs' Motion for Class Certification under Fed. R. Civ. P. 23, the entry of judgment as to damages must be stayed until opt-out notices are disseminated to unnamed class members under Fed. R. Civ. P. 23(c)(2)(B). All plaintiffs have opted in under the FLSA.

need not present an exact replication of daily employment records to justify an award of

damages. The employee need only "submit sufficient evidence from which violations of the Act

and the amount of an award may be reasonably inferred." *Martin v. Selker Bros., Inc.* , 949 F.2d

1286, 1296-97 (3d Cir. 1991). The Second Circuit, in *Reich v. Southern New England*

*Telecommunications Corp.*, 121 F.3d 58, 66 (2d Cir.1997), quoted the applicable principles from

the Supreme Court's seminal decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

687-88 (1946):

> where the employer's records are inaccurate or inadequate and the employee
> cannot offer convincing substitutes . . . [t]he solution . . . is not to penalize the
> employee by denying him any recovery on the ground that he is unable to prove
> the precise extent of uncompensated work. Such a result would place a premium
> on an employer's failure to keep proper records in conformity with his statutory
> duty; it would allow the employer to keep the benefits of an employee's labors
> without paying due compensation as contemplated by the Fair Labor Standards
> Act. In such a situation we hold that an employee has carried out his burden if he
> proves that he has in fact performed work for which he was improperly
> compensated and if he produces sufficient evidence to show the amount and
> extent of that work as a matter of just and reasonable inference. The burden then
> shifts to the employer to come forward with evidence of the precise amount of
> work performed or with evidence to negative the reasonableness of the inference
> to be drawn from the employee's evidence. If the employer fails to produce such
> evidence, the court may then award damages to the employee, even though the
> result be only approximate.

*Reich*, 121 F.3d at 66, *quoting Mt. Clemens*, 328 U.S. at 687-88.

The court in *Reich* went on to explain the plaintiff's burden in establishing a *prima facie*

damages case under *Mt. Clemens*:

> The Secretary's burden in such cases, while not overly onerous, is to establish a
> prima facie case. *See [Reich v.] Gateway Press [, Inc.]* , 13 F.3d [685,] 701 [(3d
> Cir. 1994)] ; *Secretary of Labor v. DeSisto* , 929 F.2d 789, 793 (1st Cir. 1991)
> (noting that "the Secretary's initial burden in these cases is minimal"). He is not
> required to do so in complete detail as to the wages lost by each employee.
> However, he must produce sufficient evidence to establish that the employees
> have in fact performed work for which they were improperly compensated and
> produce sufficient evidence to show the amount and extent of that work "as a
> matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687; *cf.*

*Gateway Press*, 13 F.3d at 701. Upon meeting this burden, the burden shifts to the employer, and if the employer fails to produce evidence of the "precise amount of work performed" or evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence," the court may then "award damages to the employee[s], even though the result be only approximate." *Mt. Clemens*, 328 U.S. at 687 -88.\

*Reich*, 121 F.3d at 67.

The *Mt. Clemens* rationale is a specialized application, in wage loss cases under remedial labor legislation, of the longstanding damages principle that "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co. v. S. Photo Material Co.*, 273 U.S. 359, 379 (1927); *see Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931)*; Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264 (1946)*.*

These principles have been followed in cases brought under the New York Labor Law. *See, e.g., Alphonse Hotel Corp. v. Sweeney,* 674 N.Y.S.2d 351 (1st Dep't 1998*)* (when a contractor refuses to produce records or provides inadequate or inaccurate records, use of best available evidence to determine underpayments to employees is permissible, even though these inferences are approximate in nature). When these alternate methods are applied, as under *Mt. Clemens* the burden shifts to the employer to negate the reasonableness of the calculations. *See Georgakis Painters Corp. v. Hartnett*, 565 N.Y.S.2d 863, 864-65 (3d Dep't 1991) (prevailing wage case); *Mid Hudson Pam Corp. v. Hartnett*, 549 N.Y.S.2d 835 (3d Dep't 1989) (same).

Here, because of the destruction of the vast majority of the weekly timesheets[7], plaintiffs must resort to the use of the ADP records to show their overtime and unpaid wages damages.

---

[7]Most of the plaintiffs retained some timesheets, or in the case of Winford Jackson had his own records of his work hours, but only Julio Alicea and Mr. Jackson had records sufficient records to record all of their damages.

The unpaid wages due to them are readily ascertainable from the last set of A-O's ADP records (PX45;  PX48 52:18 - 53:24, 68:2-15), except for that handful of guards who had not yet been entered into the ADP system, for which Ms. Depompo had manual records (PX51; PX48 54:11 - 55:6).

The overtime pay, however, must be derived from the ADP records. Those records show, for those guards paid on a W-2 basis, the hourly rate and number of hours worked in each two week pay period. Thus, where those hours exceed 80 per two week period, the excess must represent overtime pay. Where the guard was paid on a 1099 basis, the ADP records only reflect the amount of money due for those two weeks. In that instance, that amount must me divided by the employee's regular hourly rate - generally $20 - to derive the number of hours worked in those two weeks. Overtime can then be calculated in the same manner as a W-2 employee.

This method, obviously, undercounts the amount of overtime owed, because an employee working 80 hours in two weeks may have worked, for example, 20 hours in one week and 60 in the other, thereby entitling him to 20 hours of overtime pay; but such an instance would not lead to the payment of overtime with this methodology. Similarly, the hourly rate for those paid on a 1099 basis will be the default - $20 per hour - unless the ADP record indicates another rate, as is the case with Leonard Howard who was typically paid $22 per hour. This method will thus not account for the occasional $25 per hour rate that was paid for some stores at some times. However, this is exactly the kind of "fair and reasonable inference" that *Mt. Clemens* anticipates, and since this method is required by DePompo's destruction of records which she had an obligation to keep, and AT&T's failure to keep any records of the hours their joint employees worked, no defendant has cause to complain.

By this methodology, plaintiffs calculate plaintiffs and class members are owed unpaid overtime in the total amount of $140,238.17. (PX64, PX70, Rozger affirmation ¶ 35).

Ms. DePompo herself admits owing the guards their pay for January 28, 2011 through February 25, 2011 (PX42; PX47 182:14-9) and believes that the total unpaid wages to the guards total $185,000 (PX47 183:10-13).

Plaintiffs thus calculate that plaintiffs and the putative class are owed a total of **$325,238.17** in unpaid wages and overtime.

### B.      Plaintiffs and Class Members are Entitled to Liquidated Damages.

The plaintiffs are entitled liquidated damages under both the FLSA, 29 U.S.C. § 216(b) and the New York Labor Law, N.Y. Lab. Law§ 663(1), (3). Class members who did not file consents to be a part of this action are entitled to liquidated damages only under the New York Labor Law.

Under the FLSA, an employee is entitled to liquidated damages for overtime violations occurring up to three years prior to the filing of a claim where the overtime violation is willful, and for up to two years prior where the violation is non-willful. 29 U.S.C. § 255(a). A violation is willful where the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Herman*, 172 F.3d at 141 (citations omitted). The FLSA requires that liquidated damages equal to the amount of overtime unpaid overtime compensation – *i.e.*, 100% liquidated damages. 29 U.S.C. § 216(b). Willfulness and recklessness can both be inferred from the circumstances of the case. *Herman*, 172 F.3d at 142 (finding willfulness where one defendant relied upon the promises of an unreliable third party that the plaintiffs were being paid overtime). In the instant case, AO and DePompo, as the paying parties, were certainly aware that plaintiffs were not being paid time-and-one-half for overtime hours.

Under New York Labor Law, the employer has the burden of proving that employees are *not* entitled to liquidated damages, as the employer must "prove[ ] a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1). Employees are entitled to liquidated damages equal to the amount of unpaid overtime – that is, 100% liquidated damages – for violations up to six years preceding the filing of suit. *Id.* at § (1), (3).

While in the past, liquidated damages under the law were limited to 25% of the unpaid overtime compensation, the Labor Law was amended in 2011 to require 100% liquidated damages. *Ji v. Belle World Beauty, Inc.*, N.Y. Slip Op. 32753, NO. 603228/08 (N.Y. Sup. Ct., August 22, 2011) (PX 65). The amendments increasing liquidated damages apply retroactively. *Id.*

However, at least two other courts have held that the amendment does not apply retroactively, and did so for conflicting reasons. *Chenesky v. New York Life Ins. Co.*, 07-civ-11504 (WHP), 2012 WL 234374 at *2 (S.D.N.Y. Jan. 10, 2012)*; Wicaksono v. XYZ 48 Corp.*, 10-cv-3635 (LAK) (JCF), 2011 WL 2022644 at *6, n. 2 (S.D.N.Y. May 2, 2011). In *Wicaksono,* the court argued that "[t]here is no indication in the Act itself ... that it was intended to have retroactive effect." (*Id.*) while the court in *Chenesky* admitted that "the omission of an anti-retroactivity provision in the 2011 Amendment does suggest an intent for the amendment to apply retroactively." *Chenesky*, 2012 WL 234374 at *2. Similarly, the *Chenesky* court argued that the amendment should not apply retroactively because the amendment "expands the right to recover." *Id.* The *Wicaksono* court found that the amendment was not retroactive because it "increase[s] a party's liability for past conduct." *Wicaksono*, 2011 WL 2022644 at *6 n.2.

However, the question of the retroactivity of the state statute is to be determined under New York State law. The only New York State court to have reached a decision on the issue disagreed with the above courts on all counts, holding that the amendment applied retroactively precisely because "remedial statutes are given retroactive construction to the extent that they do not impair vested rights or create new rights"and the 100% liquidated damages provision neither "affect[s] any vested interest of defendants" nor "create[s] a new right of recovery." *Belle World* at 5.

Moreover, a 2009 amendment to the Labor Law explicitly included a provision against retroactivity: "This act shall take effect on the ninetieth day after it shall have become a law, and shall apply to offenses committed on or after such effective date." 2009 Sess. Law News of N.Y. Ch. 372A (PX 68). The 2011 amendments included no such clause. 2010 Sess. Law News of N.Y. Ch. 564 (PX 69).

Firstly, given that the legislature only two years earlier enacted an amendment that included explicit language against retroactivity, one must assume that the legislature was aware of how to prevent a statute from being applied retroactively. The legislature in 2011, being fully aware of how to write antiretroactivity language into a bill, declined to do so.

Secondly, if such a bill would not be given retroactive construction without antiretroactivity language, then one must assume that Section 4 of the 2009 amendment was entirely superfluous. This would "violate the canon against interpreting any statutory provision in a manner that would render another provision superfluous," even where the two provisions were enacted at different times. *Bilski v. Kappos*, 130 U.S. 3218, 3229 (2010); *see also Monroe County Public School Districts v. Zyra*, 51 A.D.3d 125, 853 N.Y.S.2d 821 (N.Y. 4th App. Div.

2008) ("[T]he rules of statutory construction require that we avoid rendering statutory language superfluous.").

The 2009 amendments, like the 2011 amendments, increased the amount of penalties employers would suffer for violations of the Labor Law. (PX 68, 69). The 2009 amendments increased the civil penalty for retaliation from a minimum of $200 to a maximum of $1,000, and increased the maximum penalty from $1,000 to $10,000. (PX 68). It also gave the commissioner the power to collect 25% liquidated damages, which the commissioner previously did not possess. *Id.* The 2009 amendments further shifted the burden of proving availability of liquidated damages from the employee to the employer, removing the "willfulness" requirement from the liquidated damages provision entirely. *Id.*. Where previously, employers who had violated the law non-willfully were not liable, the 2009 amendments made them liable *regardless* of willfulness, unless the employer could "prove[] a good faith basis to believe that its underpayment of wages was in compliance with the law." *Id.*

If one is to assume that *any* law increasing damages or expanding liability for NYLL violations is *not* retroactive unless otherwise stated, then one must also assume that the antiretroactivity provision in the 2009 amendments was entirely superfluous and unnecessary. One would further have to conclude that the 2011 legislature intended the bill to be nonretroactive, but somehow simply failed to include a nonretroactivity provision, despite having done so in a very similar bill only two years earlier.

A more reasonable reading of both amendments would be that the 2011 amendment did not include an antiretroactivity provision because the legislature *intended* the law to be retroactive, and moreover that the legislature in 2009 included an antiretroactivity provision

precisely because, without such language, the bill would have necessarily have been retroactive, due to its remedial nature. *See Belle World* at 5.

Plaintiffs and class members are also entitled to recover liquidated damages under both laws. Most courts in the Second Circuit have held that plaintiffs may be awarded liquidated damages under both the FLSA and New York Labor Law for the same overtime violations, though some courts have held otherwise. *Li Ping Fu v. Pop Art Int'l Inc.,* 10-civ-8592 (DLC)(AJP), 2011 WL 4552436 at *4 (S.D.N.Y. Sept. 19, 2011) ("Most courts in this Circuit hold that a plaintiff may recover both forms of liquidated damages.")*; see also, e.g., Jin M. Cao v. Wu Lian Ye Lexington Restaurant, Inc.* 08-cv-3725, 2010 WL 4159391 at *5 (S.D.N.Y. Sept. 30, 2010); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240-261-62 (S.D.N.Y. 2008).

While both laws use the term "liquidated damages," the damages "serve fundamentally different purposes." *Cao*, 2010 WL 4159391 at *5. Liquidated damages under the FLSA are not punitive, but "[r]ather, they are 'compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation." *Ke*, 595 F. Supp. 2d at 261, *quoting Herman,* 172 F.3d at 142. "In contrast, liquidated damages under the Labor Law are punitive 'to deter an employer's willful withholding of wages due.'" *Cao*, 2010 WL 4159391 at *5, *quoting Rilley v. NatWest Mkts. Group Inc.,* 181 F.3d 253, 265 (2d Cir. 1999).

Based on plaintiff's calculations of overtime owed, liquidated damages should be calculated as follows, depending on this Court's decision on wilfulness under the FLSA (thus, 3 years or 2 years of liquidated damages) and on the retroactivity of the 2011 amendments to the New York Labor Law:

| Total Overtime Owed (excluding interest) | $140,238.17 |
|---|---|
| Liq. Dam. Under NYLL at 100% | $140,170.67 |
| Liq. Dam. Under NYLL at 25% | $34,791.54 |
| Liq. Dam. Under FLSA Willful (3 years) | $125,826 |
| Liq. Dam. Under FLSA Not Willful (2 years) | $97,066.67 |

(PX 70).

Liquidated damages would also be owed on the $185,000 DePompo admits are owed plaintiffs who worked between January 28, 2011 through February 25, 2011 (PX42; PX47 182:14-9; 183:10-13).

| Unpaid Wages Owed | $185,000 |
|---|---|
| Liq. Dam. Under NYLL at 100% | $185,000 |
| Liq. Dam. Under NYLL at 25% | $46,250 |
| Liq. Dam. Under FLSA Willful (3 years) | $185,000 |
| Liq. Dam. Under FLSA Not Willful (2 years) | $185,000 |

Plaintiff's therefore believe that, including liquidated damages under the FLSA for willful violations and 100% liquidated damages under the New York Labor Law, that plaintiffs and the putative class are owed a total of **$635,996.67** in liquidated damages.

### C.   Plaintiffs and Class Members are Entitled to Prejudgment Interest.

Finally, plaintiffs and class members are entitled to 9% prejudgment interest on their claims under New York law. In New York, prejudgment interest can be recovered "because of a

breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a). New York Labor Law claims are subject to prejudgment interest. *Reilly,* 181 F.3d at 265 (2d Cir. 1999). Prejudgment interest accrues at 9% per annum (except where otherwise provided by statute) on a simple interest basis. N.Y. C.P.L.R. § 5004; *see Perero v. Food Jungle, Inc*., 2006 WL 2708055, at *8 (E.D.N.Y. Aug. 7, 2006). Interest accrues and "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). For example, when the "damages were incurred at various times," plaintiffs may use the midpoint of the accrual of each set of damages to calculate interest. *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005); *Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, 00-cv-4221 (RJH)(AJP) at *5 (S.D.N.Y. Jan. 7, 2004).

Plaintiffs Exhibit 64, submitted previously calculated interest at 9% per year from the week the overtime was owed through October 31, 2011. Plaintiffs now submit Exhibit 70, showing the calculations of interest up through June 14, 2013. (PX 70).

To ensure accuracy, interest was calculated by dividing the yearly interest into weekly interest, such that interest due on unpaid overtime accruing on, say, June 1st, 2010 would be much lower than the interest due on overtime accruing on January 1st, 2010. PX 70, Rozger Aff. The total interest owed for all parties on their unpaid overtime claims equal $41,202.21. Rozger Aff. The total interest owed on the $185,000 of unpaid wages owed from January 28, 2011 through February 25, 2011 (PX42; PX47 182:14-9; 183:10-13), would be calculated as

31

$22,144.50.[8] Plaintiffs thus calculate interest owed to plaintiffs and the putative class to be

**$63,346.71.**

### VI. CONCLUSION

For the foregoing reasons, this Court should certify this case as a class action, and grant

summary judgment to the plaintiffs on all claims for $1,024,581.55.

Dated: New York, New York
     June 14, 2013                   Respectfully submitted,

                     By:        _____/s/_____

                             Jason J. Rozger
                             BERANBAUM MENKEN LLP
                             80 Pine Street, 33rd Floor
                             New York, NY 10005
                             Ph: (212) 509-1616
                             Fax: (212) 509-8088
                  ATTORNEYS FOR PLAINTIFFS AND PROPOSED CLASS

---

[8]Calculated as $185,000 x (0.09) x (1.33). The calculation for the number of years (1.33) is based on 16 months between February 2011 and June 2013.