UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------X
JOHN GRENAWALT, CARLOS MIRANDA,
and JULIO ALICEA, on behalf of themselves
and all others similarly situated,                              Docket No.: 11-CV-2664(ALC)


                             Plaintiffs,

- against -

AT&T MOBILITY LLC; ALPHA-OMEGA
PROTECTION SERVICES CORP.;
GRACE M. DEPOMPO,
GLADIUS PROTECTION, INC.; and
CENTURIA, INC.,

                             Defendants.
------------------------------------------------------------X

## Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts

1.      Defendant Grace DePompo ("DePompo") employed plaintiffs and putative class members to provide security guard services at AT&T stores (previously, Cingular stores) as part of a subcontract, with Defendant Gladius Inc. being the primary contractor.  (PX46 64:14-65:67:12; PX47 22:9-19; 135:15-136:13; 135:2-9; PX48 57:13-18).

2.      AT&T Mobility LLC ("AT&T") owns and operates numerous retail stores in the New York metropolitan area where cell phones, cellular service, and related equipment and services are sold.  (PX52 9:14-10:13, 11:4-9, 13:7-20, 14-10-14).

3.      Gladius agreed to pay DePompo and later her company, Alpha-Omega Protection Services Corp. ("A-O"), a $5 per guard-hour "coordination fee."(PX45 46:17-43:9; PX48 57:19-23; PX47 136:21-137:7).

4. Gladius and Depompo orally agreed that DePompo would send Gladius an invoice for the wages due to the guards, which Gladius would pay.  (PX46 45:23-46:6, 48:9-19; PX48 57:24-58:4).

5. DePompo created A-O in 2007 and was the sole owner of A-0 (PX 47 130:18-19).

6. A-O had no other business besides supplying security guards.  (PX47 130:23-25).

7. DePompo hired all of the A-O security guards herself. (PX47 16:9-24; 19:19-22).

8. DePompo made schedules for the guards. (PX48 37:15-38:4)

9. DePompo had no paid non-security-guard staff, and handled all administration, hiring, and firing decisions by herself, except for the occasional unpaid help of friends who had no decision-making authority.  (PX 47 20:15-21:12; PX48 17:3-25, 18:11-17, 18:22-19:18).

10. DePompo distributed written post orders, on AT&T's letterhead (PX25) to the guards. (PX47 51:15-53:11; PX55 19:1-18).  These accurately represented the guard's responsibilities. (PX47 53:17-54:24).

11. DePompo distributed subsequent written post orders effective the summer of 2010 (PX26; PX 47 58:5-58:22, 59:23-60:5).

12. Once the guards arrived at an AT&T store, they would verify with DePompo via a phone call or text message that they had arrived at their post. (PX47 28:5-8; PX56 24:6-14; P56.1¶43).

13. If a guard was going to be late for work, he or she was supposed inform DePompo. (PX47 124:21-125:23; PX53 68:4-22; PX54 37:14-23; PX55 50:10-21; PX56 53:9-18; PX57 46:5-21; PX61 13-16).

14. Plaintiffs and class members were not paid for the last two pay periods of their employment (PX48, 53:5-11; PX47 183:14-16), which corresponds to January 28, 2011 through February 25, 2011 (PX41).

15. Plaintiffs were unpaid their wages for the last two pay periods of their employment with A-O because Gladius had not paid A-O for those invoices, causing A-O to have no money to meet its payroll. (PX 42; PX62 52:16-18).

16. Many guards worked more than 40 hours in a week. (PX48 42:12-43:3; PX53 32:1-10; PX54 55:11-14; PX56 88:16-23; PX57 36:16-37:14l PX59 21:8-15; PX60 27:11-13; PX61 25:1-5; PX62 37:23-38:1).

17. No guard was paid time-and-a-half for overtime. (PX47 129:5-130:13).

18. Some guards were paid as W-2 employees, with all applicable withholding taxes, and some were paid on a 1099 basis. There was no difference in the duties of the guards in either case. (PX 48 55:2 -56:12; PX47 86:14-87:10).

19. The New York State Department of Labor, in response to a complaint from one of the guards, found that the guards were not exempt from the overtime provisions of the FLSA. (PX50; PX48 10:20-13:3).

20. The U.S. Department of Labor considers security guards to be not exempt from the FLSA's overtime requirements. (PX58).

21. For those guards enrolled in the ADP payroll system, the last two pay periods therein represent their unpaid wages (PX45; PX48 52:18-53:24, 68:2-15).

22. For those seven guards who were not on the ADP system, Ms. Depompo had manual records (PX51; PX48 54:11 -55:6)

23. DePompo admits owing the guards their pay for January 28, 2011 through February 25, 2011 (PX42; PX47 182:14-9) and believes that the unpaid wages to the guards total about $185,000 (PX47 183:10-13).

24. To get paid, every two weeks the guards would submit a document titled "Invoice/Time Sheet" (PX 27; PX 29; PX47 81:23-82:6, 84:10-85:23) that contained the officer's name, address, and for each day worked, the date, location, and time in and time out.

25. The guards' timesheet would be faxed to DePompo (PX47 67:8-11), who would then tally up all the money owed for that pay period and transmit it to Gladius. (PX47 36:2-25, 112:15-23).

26. Gladius would send an invoice to AT&T for a particular time period after receiving the corresponding invoice from DePompo. (PX 46 47:24 - 48:12).

27. DePompo destroyed all of the timesheets after she transmitted the information to ADP for payroll processing. (PX47 37:2-7, 87:11-88:10).

28. For the guards paid on a W-2 basis, their total hours for the two week period were recorded in the ADP records (*e.g.,* PX45, p.P1551).

29. For the guards paid on a 1099 basis, only the total amount due for those two weeks was entered into ADP (*id.,* p. P1550; PX47 38:13-39:14, 86:3-13).

30. The pay period began on a Friday and ended on a Thursday. (PX47 81:13-16).

31. Most guards were paid $20 per hour (PX47 127-22-24) although some would get up to $25 per hour for some locations, or a last minute assignment (PX53 16:23-17:7; PX54 14:11-17; PX55 14:19-24; PX57 23:12-18; PX 59 16:2-5; PX60 14:11-25; PX61 22:3-15;93. PX63 15:14-21).

32. Overtime owed to the class totals $140,238.17. (PX70).

Dated: New York, New York
       June 14, 2013

                                              BERANBAUM MENKEN LLP

                                                 /s/
                                          Attorneys for Plaintiffs

By: Jason J. Rozger
80 Pine Street, 33rd Floor
New York, New York 10005
Tel. (212) 509-1616