UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN GRENAWALT, CARLOS MIRANDA          :
and JULIO ALICEA, on behalf of themselves   :
and all others similarly situated,                  :
                                                                :
                            **Plaintiffs,**            :            11 Civ. 2664 (ALC)
            -against-                                      :
                                                                :
AT&T MOBILITY, LLC, ALPHA OMEGA     :            **OPINION & ORDER**
PROTECTION SERVICES CORP., GRACE     :
DEPOMPO, GLADIUS, INC. and CENTURIA  :
INC.,                                                       :
                                                                :
                            **Defendants.**            :
------------------------------------------------------------------X
**ANDREW L. CARTER, JR., United States District Judge:**

## I.  INTRODUCTION

On April 19, 2011, Plaintiffs John Grenawalt, Carlos Miranda and Julio Alicea

(collectively, "Plaintiffs") commenced this action against a number of defendants to recover

unpaid wages and overtime under, *inter alia*, the Fair Labor Standards Act ("FLSA") and the

New York Labor Law.  Against the sole remaining and *pro se* Defendant, Grace DePompo,

Plaintiffs have moved motion for class certification of their NYLL claims and for summary

judgment on both their FLSA and NYLL claims, with an accompanying award of damages

including the unpaid wages and overtime, liquidated damages and prejudgment interest.  (ECF

No. 197.)  At a status conference held on September 19, 2014, this Court denied the summary

judgment portion of Plaintiffs' motion.  For the reasons described below, however, the class

certification component of Plaintiffs' motion is granted.

## II. BACKGROUND

### A. Factual Background[1]

In or about October 2006, DePompo, a recently retired police officer, was approached by Defendant Gladius, Inc. ("Gladius"), a Texas-based security company that maintained a contract with Defendant AT&T's predecessor-in-interest, Cingular, to provide security to certain stores in its New York market. Gladius was interested in the possibility of DePompo assisting Gladius Protection Inc. ("GPI"), an affiliate of Gladius, fulfill Gladius's agreement with Cingular/AT&T by engaging and posting security guards in some of the New York market stores during the holiday season. GPI itself had subcontracted with an entity called BCC Investigations, who was licensed to provide security services. Gladius and DePompo eventually reached an oral agreement, under which DePompo was paid a coordination fee as an independent contractor of BCC, and DePompo then reached out to officers she knew who were willing to work security in their off-hours.

In January 2007, Gladius again approached DePompo to provide security officers, but this time on a more regular basis. DePompo agreed and eventually became responsible for assigning the officers to their posts, attendance, availability and communication with the officers. DePompo coordinated the guards for BCC—who paid the guards directly and was still responsible to GPI. In or about April 2007, DePompo incorporated Defendant Alpha Omega Protection Services Corp. (A-O), whose sole business was supplying security guards for GPI, and beginning in about October 2007 the guards began to be coordinated and paid through A-O, after Gladius paid A-O. A-O regularly contracted with no less than eighty guards to provide security services to approximately twenty-three AT&T stores in New York and New Jersey.

---

[1]       The statement of the facts is derived from this Court's April 2, 2013 Opinion & Order, (ECF No. 182), and the underlying evidence cited therein.

DePompo had no paid non-security-guard staff, and handled all administration, hiring, and firing decisions by herself, except for the occasional unpaid help of friends who had no decision-making authority.

On June 24, 2008, Gladius and A-O executed an independent contractor compensation agreement ("ICA"). The ICA makes does mention of the coordination fee Gladius paid A-O/DePompo for each hour of security services billed to Gladius, or that DePompo or A-O would be providing armed guards to the AT&T stores. The pay rate for the guards is also not clear from ICA, but Gladius and Depompo had orally agreed that DePompo would send Gladius an invoice for the wages due to the guards, which Gladius would pay. In practice, most guards were paid $20 per hour although some would get up to $25 per hour for some locations, or for a last minute assignment. Some guards were paid as W-2 employees, with all applicable withholding taxes, and some were paid on a 1099 basis, but there was no difference in the duties of the guards in either case. Many guards worked more than forty hours in a week without time-and-a-half overtime compensation, although the Wage and Hour Division of the U.S. Department of Labor subsequently conducted an investigation and concluded in May 2011 that the guards were subject to the FLSA's overtime provisions.

In any event, on February 25, 2011, Gladius terminated the ICA, alleging that A-O and DePompo had intentionally sabotaged and disparaged Gladius to AT&T by providing unarmed guards and had also engaged in a fraudulent billing scheme that resulted in Gladius's overpaying A-O by approximately $700,000. Gladius also refused to pay A-O for outstanding invoices for the period of January 28, 2011 through February 25, 2011 and, as a result, A-O was unable to satisfy its payroll and the guards were not paid for the last two pay periods of their employment with A-O. On April 19, 2011, Plaintiff commenced this action, naming A-O, DePompo, AT&T,

Gladius and Centuria Inc. ("Centuria") as Defendants, the latter as a successor-in-interest to Gladius.  Plaintiff brought the lawsuit as a putative class and collective action, seeking their unpaid regular and overtime wages under the FLSA and NYLL against A-O, AT&T and DePompo (the latter two as "joint employers" under each statute), and also sought their unpaid wages from Defendants Gladius and Centuria as purported third-party beneficiaries of the ICA.

### B.  Relevant Procedural History

On March 8, 2012, Magistrate Judge Peck entered a default judgment against unrepresented A-O for $818,000, because a corporation may not appear *pro se* in federal court. (ECF No. 139).  On April 2, 2013, after several months of motion practice between the parties, this Court issued an Opinion & Order that: (1) granted summary judgment to AT&T, dismissing Plaintiffs' FLSA and NYLL claims against it on the grounds that it was not a joint employer within the meaning of those statutes; (2) granting Gladius and Centuria's motion to compel arbitration under the ICA on cross-claims asserted by A-O against it; and (3) denying Plaintiffs' motion for summary judgment on their third-party beneficiary claims against Gladius and Centuria on the grounds that that issue was to be determination in arbitration under the ICA. (ECF No. 182.)  On February 21, 2014, Plaintiffs filed the instant motion for class certification and summary judgment against Grace DePompo in her individual capacity.  While DePompo submitted an affidavit in opposition asserting that she acted in good-faith and is impecunious, (ECF No. 193), she has not opposed or otherwise responded to the class certification portion of Plaintiffs' motion.

### III.   DISCUSSION

Plaintiffs' motion seeks to certify their NYLL claims as a class action on behalf of "all employees of [A-O] who provided security services at any AT&T retail store and are owed

unpaid wages, unpaid overtime wages, or both." (Pls.' Mot. at 17, ECF No. 198.) Class certification is governed by Federal Rule of Civil Procedure 23, which requires that the party seeking certification "[have] satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  In addition to the elements of Rule 23(a), a party seeking class certification must satisfy at least one of three criteria enumerated in Rule 23(b). *Id.* at 376.  In this case, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "that a class action is superior to other available methods of adjudication." Fed. R. Civ. P. 23(b)(3).

As class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), "[i]n order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted).  Rule 23's requirements in particular are designed to "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.'" *Id.*  As such, in evaluating a Rule 23 class certification motion, district courts must "assess all of the relevant evidence admitted at the class certification stage," *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)* ("*In re IPO*"), 471 F.3d 24, 42 (2d Cir. 2006), and the burden is on the party seeking certification to demonstrate by a preponderance of the evidence that all the requirements of the Rule have been met. *See Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465

(2d Cir. 2013).  With these considerations in mind, the Court proceeds to consider the current motion.

## A.      Numerosity

Numerosity under Rule 23(a) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Courts generally presume numerosity where a class consists of forty or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg On Class Actions 2d (1985 Ed.) § 3.05).  As DePompo's payrolls record indicate seventy guards that might be entitled to overtime wages and that eighty-eight guards are owed unpaid wages for the last two pay periods, (*see, e.g.*, PX 45; PX48 44:23 – 45:1; PX 51),[2] the Court finds this element satisfied.

## B.      Commonality and Typicality

Commonality means that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Typicality, meanwhile, requires that a plaintiff's claim be typical of those of the class and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376 (quoting *SEC v. Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The "crux" of the inquiry is "to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol*, 126 F.3d at 376 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).  Courts tend to interpret typicality as requiring that the class members' claims "'arise[ ] from the same course of events,' meaning 'each class member [must] make[ ] similar legal

---

[2]      "PX__" refers to exhibits attached to February 21, 2014 Affidavit of Jason Rozger.  (ECF No. 200.)

arguments to prove the defendant's liability.'" *Marisol*, 126 F.3d at 376.  In practice, typicality and commonality "tend to merge into one another, so that similar considerations animate analysis of [both]."  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

The Court finds both requirements satisfied in this case.  The required commonality exists because Plaintiffs allege DePompo perpetrated a common wrong against them in misclassifying them as independent contractors and failing to pay them overtime and regular wages in connection with their work at AT&T retail stores.  (*See* Second Am. Compl. ¶¶ 11-12, ECF No. 55); *see also Barone v. Safway Steel Prods., Inc.*, 03-cv-4258(FB), 2005 WL 2009882, at *4 (E.D.N.Y. Aug. 23, 2005) (commonality satisfied where "plaintiffs allege a common wrong—that Safway failed to pay the prevailing wages and supplemental benefits required for public works contracts and failed to ensure payment of overtime compensation"); *Koss v. Wackenhut Corp.*, 03-cv-7679(SCR), 2009 WL 928087, at *6 (S.D.N.Y. Mar. 30, 2009) (where security officer potential class members did not receive a promised bonus, they "allege[d] injury from a common policy or set of facts, [and] the commonality requirement [was] met" (citing *Jane B. v. N.Y.C. Dep't of Soc. Servs.*, 117 F.R.D. 64, 70 (S.D.N.Y. 1987)); *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316(PAC), 2006 WL 2819730, at *12 (S.D.N.Y. Sept. 29, 2006) (in overtime case, common questions warranting certification included "whether defendants have failed to compensate class members").  Typicality is likewise satisfied by the fact that the Plaintiffs and prospective class members' claims arise from the same core set of facts and their legal arguments for relief are similar, if not identical.  These include that all the prospective Plaintiffs: (1) performed security guard work at AT&T retail stores in the New York market; (2) were not paid for any work performed between January 28, 2011 and February 25, 2011; and (3) were employees, not independent contractors, and thus improperly compensated at their regular

hourly rate for hours worked in excess of forty in any given week. *See, e,g., Gortat v. Capala Bros., Inc.*, No. 07-CV-3629(ILG)(SMG), 2009 WL 3347091, at *6 (E.D.N.Y. Oct. 16, 2009) (finding typicality satisfied where "[n]amed plaintiffs allege that they each performed similar work for defendants and that, like the other members of the class, they were never compensated for all the hours they worked as a result of Defendants' common scheme to deprive employees of pay for all hours worked"), *report and recommendation adopted*, 2010 WL 1423018 (E.D.N.Y. Apr. 09, 2010).

**C. Adequacy**

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. And second, the class members must not have interests that are 'antagonistic' to one another." *Drexel Burnham Lambert Grp.*, 960 F.2d at 291 (quoting *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). In this case, the Court finds that Plaintiffs' counsel have proven themselves thus far to be qualified, experienced and generally able to conduct this litigation. *See e.g.*, Section III-E, *infra*. Further, Plaintiffs' interests are not antagonistic to those of the class, as they both allege the same wrongs and seek the same relief. *See, e.g., Barone*, 2005 WL 2009882, at *5 (prevailing wage plaintiffs were adequate where they "seek the same relief as the rest of the class") (citing *Marisol A.*, 126 F.3d at 378)). Finally, the fact the Court has found that both commonality and typicality are satisfied itself militates in favor of finding that adequacy is satisfied as well. *See, e.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("[t]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class").

### D. Rule 23(b)(3) Requirements

As the Court has found that Plaintiffs have met all four of Rule 23(a)'s requirements, it will turn to Rule 23(b)(3)'s requirements of predominance and superiority.

#### 1. Predominance

"The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This requirement is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). "In making the predominance determination, a court must generally consider whether the proposed class can 'establish each of the . . . required elements of [their claims] using common evidence." *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 418 (S.D.N.Y. 2013) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001), *overruled on other grounds by* In re IPO, 471 F.3d 24 (2d Cir. 2006)). In sum, "[w]hile a plaintiff need not show the 'exclusivity' of common questions, it must show their predominance." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *5 (S.D.N.Y. Aug. 5, 2010).

Plaintiffs satisfy these requirements in this case. In a misclassification and unpaid wage case like this, the central issue is whether the Plaintiff classified and paid all the putative employees properly, and this typically predominates over factual individualized findings like job titles, hours, and location of work, which are in any event largely similar in this case. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004) (where "the gravamen of

[plaintiffs'] claim is that defendants . . . deprived employees of . . . overtime pay[,] [a]lthough [some] determinations . . . will require individualized findings, common liability issues otherwise predominate"); *Gortat*, 2009 WL 3347091, at *7 (differences in position, hours and method of payment "do not predominate over the main issue: . . . that defendants paid all of these employees for fewer hours than they claim to have worked").

       2.  *Superiority*

"In addition to predominance, Rule 23(b)(3) requires that plaintiffs show 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Relevant considerations include:

> [1] the class members' interests in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already begun by or against class members; [3] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [4] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Each of these considerations weighs in favor of class certification here.

As an initial matter, since many of the class members are alleged to be owed only a relatively modest amount which might not justify the cost of individual litigation, (*see, e.g.*, PX65), it is clear that for them "pursuing this litigation individually would be a hindrance rather than a boon . . . [and that] 'a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses." *Jacob*, 289 F.R.D. at 423 (S.D.N.Y. 2013) (quoting *Han v. Sterling Nat'l Morg. Co.*, No. 09 Civ. 5589, 2011 WL 4344235, at *11 (E.D.N.Y. Sept. 14, 2011)).  Further, as seven other plaintiffs have joined the FLSA collective action pursuant to 29 U.S.C. § 216(b) already before this Court, "concentrating the litigation in [this] forum simplifies and streamlines the litigation process."

*Augustin v. Jablonsky (In re Nassau Cnty. Strip Search Cases)*, 461 F.3d 219, 230 (2d Cir.

2006). The Court also does not anticipate any difficulties in managing the class action.

### E. Class Counsel

The Court having determined that all of Rule 23's class certification requirements are

satisfied, it only remains for it to appoint class counsel. The appointment of class counsel is

governed by Rule 23(g) of the Federal Rules of Civil Procedure, which mandates that a court

certifying a class appoint class counsel, and specifies that a court must consider:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action; (ii) counsel's experience in handling
> class actions, other complex litigation, and the types of claims
> asserted in the action; (iii) counsel's knowledge of the applicable
> law; and (iv) the resources that counsel will commit to representing
> the class . . . .

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). A court may also "consider any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P.

23(1)(B); *Jacob*, 289 F.R.D. at 423. Plaintiffs request that this Court appoint Beranbaum

Menken LLP as class counsel, and the Court finds that, as other courts have found in similar

cases,[3] the aforementioned factors support the requested appointment. Beranbaum Menken is

amply qualified, experienced and able to represent the class in this litigation, and has already

done so in substantial respects to date.

### IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion (ECF No. 197) is **GRANTED** as to class

certification, while it is **DENIED** as to summary judgment for the reasons stated on the record at

the September 19, 2014 status conference.

---

[3]    *See, e.g., Ramos v. SimplexGrinnell L.P.*, 796 F. Supp. 2d 346, 358 (E.D.N.Y. 2011); *Mitchell v. Cnty. of Clinton*, 2007 WL 1988716, *6, 8:06-CV0254 (N.D.N.Y. July 5, 2007); *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005).

**SO ORDERED.**

**Dated: September 29, 2014**
       **New York, New York**

_____
**Andrew L. Carter, Jr.**
**United States District Judge**